UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

04 SEP -3 AM 8:48

| | |
|---|---|
| WANDA WEEKS SMITH, | ) |
| Plaintiff, | ) |
| vs. | ) CV 04-B-0623-NE |
| KMART CORPORATION, | ) |
| Defendant. | ) |

**ENTERED**
SEP -3 2004

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Judgemnt on the Pleadings. (Doc. 6.) Plaintiff Wanda Weeks Smith has sued her former employer, defendant Kmart Corporation, alleging that defendant interfered with plaintiff's rights under the Family and Medical Leave Act. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Judgment on the Pleadings, (doc. 6), is due to be granted.

### I. STANDARD OF REVIEW

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)(citing *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir.1999)). The court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.* (citing *Mergens*, 166 F.3d at 1117).



## II. STATEMENT OF FACTS ACCORDING TO PLAINTIFF'S COMPLAINT

Plaintiff began working for defendant on October 26, 2000. (Doc. 1 ¶ 6.) She worked as a full-time employee at defendant's store in Decatur, Alabama. (*Id.* ¶¶ 4, 6.)

On her way to work on March 1, 2002, plaintiff was in an automobile accident. (*Id.* ¶ 7.) When she arrived at work sometime later that day, she informed Jim Reagan, Store Manager, and Terri Bentley, Personnel Manager, that she had been in an accident. (*Id.* ¶ 8.) A couple of hours later, plaintiff's neck began to swell. (*Id.* ¶ 9.) Reagan encouraged plaintiff to seek treatment, and she left work and went to the emergency room. (*Id.*) After being seen in the emergency room, plaintiff called Reagan, who told her to go home. (*Id.* ¶ 11.)

On March 7, 2002, plaintiff was seen by her family physician, who told her not to return to work without his approval. (*Id.* ¶ 12.) Plaintiff called Reagan; during this conversation, Reagan told plaintiff that her job would be waiting for her when her doctor released her for work. (*Id.* ¶ 13.)

Plaintiff's physician gave her a work slip, which stated that she would be off from work until April 15, 2002. (*Id.* ¶ 16.) Shortly thereafter, plaintiff called defendant to inform it that she would out until April 15, 2002. (*Id.* ¶ 17.) When she called the store, plaintiff spoke with Bentley, who told her that defendant did not have medical leave. (*Id.*) Later that same day, when plaintiff took her doctor's excuses to Bentley, Bentley told her that she had been removed from defendant's payroll because she had abandoned her job. (*Id.* ¶ 18.)

After Bentley told her she no longer had a job with defendant, plaintiff continued to

try to contact Reagan. (*Id.* ¶ 21.) She finally spoke with Reagan during the last part of April or early May of 2002. (*Id.* ¶¶ 22-23.) Plaintiff alleges, "During this conversation, Mr. Reagan told Ms. Smith that she needed to come in to fill out some 'leave of absence' paperwork. Ms. Smith replied that she was not taking a leave of absence, that her absence was for medical reasons." (*Id.* ¶ 23.)

Plaintiff's Complaint does not allege any contact between defendant and plaintiff between the conversation with Reagan regarding leave-of-absence paperwork and June 2, 2002. By June 2, 2002, plaintiff had been released to return to work. (*Id.* ¶ 24.) She contacted defendant and "offered to return to work on June 3, 2002." (*Id.*) The Complaint does not indicate to whom plaintiff spoke on June 2, 2002; however, it does state that plaintiff was told "she had no job because she had abandoned her employment." (*Id.*)

Plaintiff filed her Complaint with this court on March 25, 2004. In her Complaint, plaintiff alleges she "was denied full benefits and rights under the [FMLA] in that she was denied leave to which she was entitled under the FMLA and her employment was wrongfully terminated." (*Id.* ¶ 26.)

### III. DISCUSSION

The Supreme Court has held:

> To prevail under the cause of action set out in [29 U.S.C.] § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and

3

for "appropriate" equitable relief, including employment, reinstatement, and promotion, 2617(a)(1)(B). The remedy is tailored to the harm suffered. *Ragsdale v. Wolverine*, 535 U.S. 81, 89 (2002). Therefore, "To state a claim of interference with a substantive [FMLA] right, an employee need only demonstrate by a preponderance of the evidence that [s]he was entitled to the benefit denied." *Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001)(citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000). "The issue [in an FMLA interference claim] is simply whether the employer provided its employee the entitlements set forth in the FMLA . . . . Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)(internal citations and quotations omitted). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. 2615(a)(1). The FMLA creates two primary rights – (1) the right to a leave of absence for a qualifying purpose, and (2) right to reinstatement upon return from such leave.

Defendant contends that plaintiff's claim is due to be dismissed because plaintiff did not return to work until fourteen weeks after her accident; therefore, it was not required to reinstate her. In response, plaintiff argues:

> Defendant's motion for judgment on the pleadings is based on a mistaken reading of Plaintiff's Complaint. [Plaintiff] was told by her physician on March 7, 2002, that therapy would take approximately six weeks, and [plaintiff] informed [defendant] of the same. [Plaintiff] was told by [defendant] on or about the end of March 2002, approximately *four weeks* after . . . the date of her automobile accident, and, more importantly, after her

4

> leave began, that she had been taken off the payroll because she had abandoned her job. In effect, she was terminated long before a twelve week period had elapsed, and it is *at that point* (and thereafter) that [plaintiff's] rights were adversely affected by [d]efendant. [Plaintiff], at that point, only required six weeks leave under the FMLA, and [defendant] responded by terminating [her].

(Doc. 10 at 3.)

As of June 2, 2002, plaintiff had been absent from work for more than twelve weeks;[1] therefore, plaintiff "did not have the right to be restored to her prior or similar position" on June 3, 2002. *See McGregor v. AutoZone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999). Plaintiff's twelve weeks of medical leave expired on May 25, 2002. Plaintiff's Complaint alleges, "On June 2, 2002, [plaintiff] returned to [defendant] after being released from therapy and offered to return to work on June 3, 2002." (Doc. 1 ¶ 24.) Nothing in the Complaint indicates that plaintiff was capable of returning to work on or before May 25, 2002.

> The regulations provide –
>
> What are an employee's rights on returning to work from FMLA leave?
>
> . . .
>
> (b) If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.

29 C.F.R. § 825.214.

---

[1] Plaintiff was off work from March 1 until June 2, when she reported that she was ready to return to work. This is a period of 93 days, which is more than thirteen weeks.

In order to establish that she was entitled to reinstatement, plaintiff must allege and prove that she was capable of returning to work on or before May 25, 2002, the last day of her twelve weeks of leave. *See Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998),[2] *cited in Wilcock v. National Distributors, Inc.*, No. 00-298-P-H, 2001 WL 877547, *4 (D. Me. Aug. 2, 2001); *see also Beckendorf v. Schwegmann Giant Super Markets, Inc.*, 1997 WL 191504, *3 (E.D. La. )("[defendant] had no legal duty to reinstate [plaintiff] in any position when she was not capable of returning to her position at the expiration of the 12 week period;" therefore, "her termination was not contrary to the FMLA."(citing 29 C.F. R. § 825.214(b))), *aff'd without opinion* 134 F.3d 369 (5th Cir. 1997).

---

[2]The *Cehrs* court held:

> The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" because of a serious medical condition making the employee unable to work. 29 U.S.C. § 2612(a)(1)(D) (1994). Cehrs's leave began on November 22, 1993, and her leave under the FMLA would have ended on February 12, 1994.
>
> It is undisputed that on February 12, 1994, Cehrs was still unable to work. Cehrs argues that Northeast back-dated her termination to January 20, 1994. Northeast disputes this assertion and claims that Cehrs was fired as of February 28, 1994. Regardless of which date is correct, Cehrs was clearly unable to return to work within the period provided by the FMLA. As the district court noted, "it would be elevating form over substance to say that the effective termination date chosen by [Northeast] is meaningful to the Court's analysis under the FMLA."

*Cehrs*, 155 F.3d at 784-85.

Plaintiff's Complaint alleges that plaintiff spoke with Terri Bentley, Personnel Manager, after March 25, 2002, to inform defendant that she would need additional medical leave to April 15, 2002. (Doc. 1, ¶¶ 8, 16-17.) At this time, plaintiff was not capable of returning to work. (*Id.* ¶ 16.) Plaintiff did not inform defendant that she was capable of returning to work until June 2, 2002. (*Id.* ¶ 24.) As of that date, plaintiff had exhausted her FMLA leave and defendant was not required to reinstate her. Therefore, plaintiff's claim is due to be dismissed.

The court finds that the fact that, in March or April, Bentley had told plaintiff she had been removed from the payroll does not change this result. Plaintiff alleges that she was not capable of returning to work at the time she spoke with Bentley. Moreover, after this incident in late March or early April, but still within twelve weeks of her accident, plaintiff spoke with Reagan, the Store Manager, who told her she needed to complete some paperwork regarding her leave. Such paperwork would not be requested or required if Reagan considered plaintiff to be terminated as of the time she spoke with Bentley in March or April.

Because plaintiff's Complaint demonstrates that she was not entitled to FMLA benefits on June 2, 2002, when she told defendant that she was ready to return to work and defendant refused to reinstate her, defendant's Motion for Judgment on the Pleadings will be granted.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts

in dispute and defendant is entitled to judgment as a matter of law.  An order granting defendant's Motion for Judgment on the Pleadings will be entered contemporaneously with this Memorandum Opinion.

  **DONE** this ___3rd___ day of September, 2004.

               _Sharon Lovelace Blackburn_
               **SHARON LOVELACE BLACKBURN**
               United States District Judge